Bart McLIN and Michael O.
Vinson, Petitioners,

v.

The Honorable Preston TRIMBLE, District Judge of the 21st Judicial District and J.C. Stewart, Respondents.

No. 73237.

Supreme Court of Oklahoma.

June 19, 1990.

Robert H. Henry, Atty. Gen., Robert A. Nance and Timothy S. Gilpin, Asst. Attys. Gen., Oklahoma City, for petitioners.

Lee Cate, Norman, for respondents.

SUMMERS, Justice.

## I.

The first question is whether two Corrections Department employees named as defendants in an inmate's civil rights case may have rejection of their "qualified immunity" defense reviewed in this court prior to trial. The second is whether that defense insulates them from having to defend a suit for damages. We answer both questions in the affirmative.

The plaintiff, J.C. Stewart, brought a civil rights action against three employees of the Oklahoma Department of Corrections. The defendants filed a motion for summary judgment based on the defense of qualified immunity. The trial court denied the motion and two of the defendants appealed. Their petition in error requested an immediate appeal or alternatively, review of the trial court's action by extraordinary relief. They then filed an amended application for extraordinary relief (prohibition) and again asserted a right to an immediate appeal.

■ The petitioners correctly state that they have a right to an immediate appeal when a *federal* court rejects a defense of qualified immunity. They assert that this court should also grant immediate appeals from interlocutory orders which deny a claim of qualified immunity in an action under 42 U.S.C. § 1983. They argue that qualified immunity is not merely an immunity from damages, but immunity from suit and trial as well. Thus, they conclude that a post-trial appeal is inadequate to protect their immunity. The respondent/real party in interest has not responded.[1]

We assume original jurisdiction pursuant to Art. VII, § 4, of the Oklahoma Constitution in order to address the issue of first impression concerning interlocutory review in civil rights actions brought in state courts. *See, First National City Bank of New York v. Smith*, 531 P.2d 321 (Okla. 1975).

## II.

The question before us involves the scope of qualified immunity in § 1983 actions brought in state courts. The qualified immunity doctrine may be stated thus:

"government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mitchell v. Forsyth*, 472 U.S. 511, 517, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 [2738] 73 L.Ed.2d 396 (1982).

Qualified immunity was provided by common law and was not abolished by the enactment of § 1983. *Pierson v. Ray*, 386 U.S. 547, 554–555, 87 S.Ct. 1213, 1217–1218, 18 L.Ed.2d 288 (1967).

■ Although § 1983 provides a "uniquely federal remedy", *Mitchum v. Foster*, 407 U.S. 225, 239, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972), and, thus, a federal cause of action, *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 68,

---

1. The respondent/district judge did respond. The failure of a party to respond to an application for a writ does not, by itself, result in its issuance. See, *State ex rel. Oklahoma Capitol Improvement Authority v. E.A. Cowen Construction Co.*, 518 P.2d 1264, 1266 (Okla.1974), where-in despite the failure to file a response we refused to issue the writ, being unable to determine as matter of law that the party was entitled to relief. Thus, we will examine the merits of the petitioners' claims.

53 S.Ct. 278, 280–81, 77 L.Ed. 619 (1933), the courts of this state hear § 1983 claims. *Willbourn v. City of Tulsa,* 721 P.2d 803 (Okla.1986).

However, the assertion of an immunity is not a state-law created defense to a federal cause of action. The issue of the application of an immunity is one of federal law. *Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980) (state sovereign immunity not applicable to § 1983 action in state court). *See also,* Steinglass, *The Emerging State Court § 1983 Action: A Procedural Review,* 38 U.Miami L.Rev. 381, 475 (1984). The Court emphasized this point in *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), wherein it explained that state immunity law was "preempted"

in § 1983 actions brought in state court because state immunity law would thwart the Congressional remedy and that immunities to § 1983 actions were provided by its prior decisions. *Id.* 108 S.Ct. at 2307. Thus, the scope of qualified immunity in a state court proceeding is the same as that found in a federal court.

### III.

There can be no doubt that a defendant is entitled to an immediate appeal from an interlocutory adjudication of qualified immunity in federal court. In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), a plurality of the Supreme Court [2] discussed the earlier *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and said:

**2.** The holding in *Mitchell* that interlocutory orders denying qualified immunity are immediately appealable was in a plurality opinion by White, J. and in which Burger, C.J., Blackmun, J., and O'Connor, J., joined. In one case after *Mitchell* wherein a circuit court dismissed a qualified immunity appeal because it was from an interlocutory order a petition for certiorari was granted and the United States Supreme Court vacated the circuit court's judgment and remanded the case "in light of *Mitchell v. Forsyth,* 472 U.S. 511 [105 S.Ct. 2806, 86 L.Ed.2d 411] (1985)." *See, Adams v. Jasinski,* 473 U.S. 901, 105 S.Ct. 3518, 87 L.Ed.2d 646 (1985), and *Jasinski v. Adams,* 781 F.2d 843, 845 (11th Cir. 1986), wherein the procedural history of the case is explained. *Every federal circuit court with jurisdiction over § 1983 appeals holds that interlocutory orders denying qualified immunity are appealable pursuant to Mitchell.* First Circuit: *Fernandez v. Leonard,* 784 F.2d 1209, 1211 (1st Cir.1986); *Unwin v. Campbell,* 863 F.2d 124, 129 (1st Cir.1988); *Cheveras Pacheco v. Rivera Gonzalez,* 809 F.2d 125, 126 (1st Cir.1987); *Zayas–Rodriguez v. Hernandez,* 830 F.2d 1, 2 (1st Cir.1987); *Kaiter v. Town of Boxford,* 836 F.2d 704, 706 (1st Cir.1988). Second Circuit: *Musso v. Hourigan,* 836 F.2d 736, 740 (2nd Cir.1988); *Giacalone v. Abrams,* 850 F.2d 79, 80 (2nd Cir. 1988). Third Circuit: *Prisco v. United States Dept. of Justice,* 851 F.2d 93, 95–96 (3rd Cir. 1988), *cert. denied sub nom., Smith v. Prisco,* —— U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989). Fourth Circuit: *Young v. Lynch,* 846 F.2d 960, 961 (4th Cir.1988). Fifth Circuit: *Helton v. Clements,* 787 F.2d 1016, 1017 (5th Cir. 1986); *Stevens v. Corbell,* 798 F.2d 120, 121 (5th Cir.1986); *Brown v. Texas A & M University,* 804 F.2d 327, 331–332 (5th Cir.1986). Sixth Circuit: *Huron Valley Hospital v. City of Pontiac,* 792 F.2d 563, 566–567 (6th Cir.1986), *cert. denied sub nom., Walker v. Huron Valley Hospital,* 479

U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986); *Kennedy v. City of Cleveland,* 797 F.2d 297, 298–300 (6th Cir.1986), *cert. denied sub nom., Hanton v. Kennedy,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); *Eugene D. by and through Olivia D. v. Karman,* 889 F.2d 701, 705 (6th Cir.1989). Seventh Circuit: *Lojuk v. Johnson,* 770 F.2d 619, 621 (7th Cir.1985) *cert. denied,* 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986); *LeClair v. Hart,* 800 F.2d 692, 694 (7th Cir.1986). Eighth Circuit: *Craft v. Wipf,* 810 F.2d 170, 171–172 (8th Cir.1987); *Wright v. South Arkansas Regional Health Center, Inc.,* 800 F.2d 199, 202–203 (8th Cir.1986). Ninth Circuit: *Kraus v. County of Pierce,* 793 F.2d 1105, 1107–1108 (9th Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987); *White v. Pierce County,* 797 F.2d 812, 814 (9th Cir.1986); *Chalkboard Inc. v. Brandt,* 879 F.2d 668, 669 (9th Cir.1989); *Baker v. Racansky,* 887 F.2d 183 (9th Cir.1989); *Ortiz v. Van Auken,* 887 F.2d 1366, 1367 (9th Cir.1989). Tenth Circuit: *Jones v. City & County of Denver,* 854 F.2d 1206, 1207 (10th Cir.1988); *De Vargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 716 (10th Cir.1988). Eleventh Circuit: *Flinn v. Gordon,* 775 F.2d 1551, 1552 (11th Cir.1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986); *Jasinski v. Adams,* 781 F.2d 843, 845 (11th Cir.1986); *Clark v. Evans,* 840 F.2d 876, 879 (11th Cir.1988); *Rich v. Dollar,* 841 F.2d 1558, 1560–1561 (11th Cir.1988); *McDaniel v. Woodard,* 886 F.2d 311, 313 (11th Cir.1989); *Tillman v. Coley,* 886 F.2d 317, 319 (11th Cir. 1989); *Hudgins v. City of Ashburn, GA,* 890 F.2d 396, 402 (11th Cir.1988). District of Columbia Circuit: *Martin v. Malhoyt,* 830 F.2d 237, 246 n. 24 (D.C.Cir.1987); *Martin v. D.C. Metropolitan Police Dept.,* 812 F.2d 1425, 1428 n. 10 (D.C.Cir. 1987), *modified on other grounds,* 817 F.2d 144 (1987).

"Harlow thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying absolute immunity indicates to us that the denial of qualified immunity should be similarly appealable; in each case, the district court's decision is effectively unreviewable on appeal from a final judgment." *Mitchell v. Forsyth,* 472 U.S. at 526–527, 105 S.Ct. at 2815–2816. (Emphasis in original).

The opinion in *Mitchell* recognized that qualified immunity is an entitlement to not be subject to suit, and that entitlement is effectively lost if the suit erroneously goes to trial. Thus, a review of an erroneous pretrial decision regarding qualified immunity was held available by an appeal.

■ Federal law is paramount to any state law which conflicts with federal law in § 1983 actions brought in state court. *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123 (1988). *See also,* Wolcher, *Sovereign Immunity and the Supremacy Clause: Damages Against the States in Their Own Courts for Constitutional Violations,* 69 Calif.L.Rev. 189, 239 (1981). In *Felder,* the court said with regard to a state notice-of-claim statute:

"Because the notice-of-claim statute at issue here conflicts both in its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the § 1983 action is brought in state court." *Id.* 108 S.Ct. at 2306–2307.

The court thus found a state statute to be preempted because a § 1983 action would have a predictably different outcome merely because the action was brought in state court instead of federal court. The Court emphasized this view when it said that: "States may not apply such an outcome-determinative law when entertaining substantive federal rights in their courts." *Id.* 108 S.Ct. at 2308. The Court also said:

"Just as federal courts are constitutionally obligated to apply state law to state claims, see *Erie [R. Co. v. Tompkins], supra,* 304 U.S. [64], at 78–79, 58 S.Ct. [817], at 822–823 [82 L.Ed. 1188 (1938)], so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected.' *Garrett v. Moore–McCormack,* 317 U.S. 239, 245, 63 S.Ct. 246, 251, 87 L.Ed. 239 (1942)." *Felder v. Casey,* 108 S.Ct. at 2313.

Thus, state courts have a constitutional duty pursuant to the Supremacy Clause to recognize the "substantial rights" arising out of a federal clause of action when such is brought in state courts.

If an order denying a claim of qualified immunity was not reviewable prior to trial in a state court then it is predictable with certainty that the outcome would be effectively losing the immunity merely because the action was brought in state court. The federally recognized entitlement to qualified immunity is lost if an erroneous pretrial adjudication of that entitlement goes to trial.

■ Thus, we hold that a defendant's entitlement to review of an order denying him qualified immunity by a higher court prior to trial is mandated by the Supremacy Clause. *Felder v. Casey, supra.* However, once we establish that a defendant is entitled to some review of his asserted qualified immunity prior to trial the question still remains as to the form that review will take.

■ The proceeding before the court is not an appeal from a final order, nor an interlocutory appeal of the nature sanc-

tioned by state statutes and decisional law. *See*, 12 O.S.1981, § 952. This court will not review a trial court order which overrules a motion for summary judgment. *Rowan v. Rowan*, 523 P.2d 1068 (Okla.1974). The rules of appellate procedure absolutely prohibit considering such a trial court's order on a certified interlocutory appeal; "[n]o certified interlocutory order shall be considered if taken from an order overruling a motion for summary judgment". 12 O.S. 1981, Ch. 15, App. 2. Rules of Appellate Procedure in Civil Cases, Rule 1.50.

An interlocutory order adjudicating. a claim of qualified immunity is appealable in federal court pursuant to the collateral order doctrine because the immunity is a " 'claim of right separable from, and collateral to, rights asserted in the action' ". *Mitchell v. Forsyth*, 472 U.S. at 527, 105 S.Ct. at 2816. An order adjudicating qualified immunity " 'resolve[s] an important issue *completely separate from the merits of the action* ' ". *Id.* 472 U.S. at 543, 105 S.Ct. at 2824. (Brennan, J., concurring in part and dissenting in part, discussing the scope of the collateral order doctrine) (emphasis added). An appeal of a certified interlocutory order under 12 O.S.1981, § 952(b)(3), must involve an order which "affects a substantial part of the merits of the controversy". Since qualified immunity is defined under federal law as separate from the merits of the federal cause of action its adjudication in state court would likewise not affect the merits of the federal cause of action. Thus, the order simply could not be appealable as a certified interlocutory order under § 952.

This court does not have appellate jurisdiction by either express constitutional provision or legislative enactment over the trial court's order before us. The petitioning defendants, tacitly recognizing this, suggest that when a state court entertains a federal civil rights action, an official defendant "should" be able to utilize all the federal avenues of relief available. This requires us to examine whether there is a federally created right to a state court appeal that must be recognized. Does the Supremacy Clause, as interpreted in *Felder*, mandate providing an interlocutory appeal for trial court decisions denying claims of qualified immunity in state court civil rights actions?

One author noted that Judge Learned Hand viewed the Supremacy Clause as a grant of jurisdiction to state courts, but then the author argued that this view was inconsistent with the Constitution. R. Berger, *Congress v. The Supreme Court*, 244–258 (1969). More recently, members of the High Court have expressed their views. In *F.E.R.C. v. Mississippi*, 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982), the separate opinion by Justice Powell included the following:

"The Court cites *Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), in support of the proposition that under some conditions the Federal Government may call upon state governmental institutions to decide matters of federal policy. But *Testa* recognized that, when doing so, Congress must respect the state institution's own decision-making structure and method. That opinion limited its holding to circumstances under which the state court has 'jurisdiction adequate and appropriate *under established local law* to adjudicate this [federal] action.' *Id.*, at 394 [67 S.Ct. at 815] (emphasis added). The Testa Court then emphasized its meaning by citing *Herb v. Pitcairn*, 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 (1945), where the Court stated that '[i]t would not be open to us' to insist on adjudication in a state court of a federal claim arising beyond the jurisdiction of the local court." *Id.* 456 U.S. at 773 n. 4, 102 S.Ct. at 2145 n. 4. (Powell, J., concurring in part and dissenting in part).

The majority opinion did not contest this view of the scope of the Supremacy Clause. *Id.* 456 U.S. at 769–770, 102 S.Ct. at 2142–2143. A similar view was expressed in Justice Harlan's concurring opinion in *General Oil Co. v. Crain*, 209 U.S. 211, 232, 28 S.Ct. 475, 52 L.Ed. 754 (1908). Nothing in *Testa* nor any other Supremacy Clause decision we have seen upsets the traditional

notion that a state may determine the jurisdictional requirements of its own courts.[3]

 The Due Process Clause does not, by itself, mandate any particular form of procedure. *Mitchell v. W.T. Grant Company,* 416 U.S. 600, 610, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Due process " 'is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Id.* The particular situation demands protecting a defendant's claim of qualified immunity from an erroneous trial court decision so that an immune defendant is not subjected to trial. This court has reviewed a claim of immunity prior to discovery and trial by an original action in this court. *Powell v. Seay,* 553 P.2d 161 (Okla.1976). In *Powell,* a suit against a district attorney with prosecutorial immunity, we recognized that a remedy by appeal, i.e., from a final order, would not provide an adequate remedy. *Id.* 553 P.2d at 164–165. We stated that no cause of action existed against the immune defendant, and further recognized that the order compelling the defendant to submit to discovery was unappealable. *Id.* 553 P.2d at 165. We issued a writ of prohibition in that case and prohibited the respondent judge from proceeding in a § 1983 action wherein the defendant was immune. *Id.*

Likewise, a State trial court decision concerning qualified immunity may be reviewed by an original action in this court. A petitioner seeking extraordinary relief obtains review of his claim by this court much sooner than by an ordinary appeal. *Thomas v. Hampton,* 583 P.2d 506 (Okla. 1978). A petitioner is able to establish a record in this court, 12 O.S.1981, Ch. 15, App. 1, Rules of the Supreme Court, 7 and 37, which would not be any great burden since the relevant material would have already been submitted at the trial level. The size of the record so submitted should not be very large since qualified immunity

questions "should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987). Review of a claim of qualified immunity by an original action in this court clearly satisfies the Due Process Clause.

 Our views summarized are these. The Supremacy Clause does not create jurisdiction in a state appellate court where none otherwise exists. *Testa v. Katt, supra,* and *Herb v. Pitcairn, supra.* We do not have appellate jurisdiction over the trial court order before us. *Rowan v. Rowan, supra.* The Supremacy Clause does require recognition of a substantive federal right arising out of a federal cause of action when such action is adjudicated in state court. *Felder v. Casey, supra.* The federal entitlement in the present case is review, prior to trial, of an erroneous trial court decision denying a claim of immunity. *Mitchell v. Forsyth, supra. A trial court order denying a claim of qualified immunity properly presented to a trial court will be reviewed on the merits of the immunity claim prior to trial by an original action in this court properly presenting the claim. Powell v. Seay, supra,* and *Felder v. Casey, supra.* We therefore hold that the petitioners herein are not entitled to an interlocutory appeal, but may seek review of a trial court's decision concerning qualified immunity via an original action.

### IV.

We now address the merits of the immunity defense. The plaintiff's petition alleged that McLin had been inadequately trained in transporting prisoners; that McLin showed deliberate indifference to the medical needs of the plaintiff while transporting the plaintiff; that "plaintiff suffered great pain and infections due to the pattern of conduct of the defendants, which taken together form a policy of deliberate indifference"; and that "defendant Vinson, who is a physicians assistant, re-

---

**3.** *Felder* is not particularly instructive herein because the state statute in question therein was not a limit on a court's jurisdiction. *See, Felder*

*v. Casey,* 139 Wis.2d 614, 408 N.W.2d 19 (1987) and *Figgs v. City of Milwaukee,* 121 Wis.2d 44, 357 N.W.2d 548, 552, n. 6 (1984).

fused care of the plaintiff" while the plaintiff was incarcerated in Lexington. Essentially, the plaintiff alleged that the defendants injured him while transporting him from a hospital to a prison and that he received inadequate medical care upon his arrival at the prison.

Since the immunity claim was made in the context of a motion for summary judgment we must examine the undisputed facts to determine if the immunity was shown with regard to the claims of the plaintiff. Summary judgment is appropriate only when there is no substantial controversy as to any material fact. *Erwin v. Frazier,* 786 P.2d 61, 62 (Okla.1989). The following facts and allegations of fact appear in the plaintiff's deposition attached to the petitioners' motion.

The plaintiff was transported from Central State Hospital to the correctional center in Lexington. He stated that defendant McLin was driving the transportation van and did not notice a stop sign as he approached an intersection. The correctional officer "slammed on his brakes" but "realizing he was already out into the middle of the road ... just accelerated real fast, as a matter of fact, throwing us into the back of the seat." He said that this action reinjured his neck.[4] He also said that three turns were handled in careless manner. He stated that the driver did not intend to hurt him, but "I think his intent for driving recklessly and fast was to enable him to get back to the facility as fast as he possibly could to benefit him getting off of work

without any concern or care for the people he was transporting." He also said that McLin had been complaining to another correctional officer in the van that transporting the prisoners from Norman to Lexington at 5:00 p.m. would "throw us late getting off [work]".

The inmate also sued Vinson, a physician's assistant at the corrections infirmary. The medical records are attached to that defendant's motion. The notes of the physician's assistant show that the plaintiff was admitted to the Lexington infirmary on July 24, 1987, and placed on medication. One physician's assessment described the physical examination of the plaintiff on the day of admission and observed that the patient was wearing a neck collar, complaining of pain in the neck, head, and arms and that the surgical wound was "inflamed, swollen and red, tender to palpation." Another physician's assessment described the draining of the surgical wound after admission to the prison infirmary, performance of a bacterial culture, and placing the plaintiff on medication for the abcess. This same physician's assessment stated that: "[t]he abcess healed without complication ... and [t]he patient was discharged from the infirmary in satisfactory condition."

The qualified immunity doctrine shields "government officials performing discretionary functions,"[5] from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights." *Mitchell v. Forsyth,* 472

---

**4.** The plaintiff had injured his neck while riding a horse and then underwent a cervical disc fusion at Oklahoma Memorial Hospital. He was transferred to Central State Hospital on July 21, 1987, for post-operative care. The plaintiff was discharged to the Lexington infirmary on July 24, 1987, and transferred on that date.

**5.** The term "discretionary function" has different meanings in different contexts. In our recent case involving 51 O.S.Supp.1989, § 155(5) (Oklahoma's Governmental Tort Claims Act), we held that a discretionary function includes initial policy level or planning decisions and not operational level decisions made in the performance of policy. *Nguyen v. State of Oklahoma,* 788 P.2d 962 (Okla.1990). In *Procunier v. Na-*

*varette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), the Court held that non-policy making governmental employees were entitled to qualified immunity. In the words of one author: "In *Procunier v. Navarette,* a 1978 decision, the Supreme Court held that qualified immunity protects prison officials *at both the supervisory, high discretion level and the subordinate, ministerial, minimal discretion level."* S. Nahmod, *Civil Rights and Civil Liberties Litigation,* 476 (2d ed. 1986) (emphasis added). In *Procunier,* the subordinate employees included correctional counselors and a member of the prison staff who processed the prisoner mail. 434 U.S. at 556 n. 2, 98 S.Ct. at 857 n. 2. In the case before us the prison employees were performing discretionary functions for the purpose of qualified immunity. *Procunier v. Navarette, supra.*

U.S. 511, 517, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). An analysis of a claim of qualified immunity usually requires a court to determine if the applicable law was "clearly established" instead of determining the merits of the plaintiff's claim.[6] Whether a defendant violated the law is a different inquiry than whether the law was clearly established at the time of the acts of the defendant. *See, Mitchell v. Forsyth,* 472 U.S. at 529 n. 10, 105 S.Ct. at 2817 n. 10. However, one court has explained that in a qualified immunity appeal the question of whether a constitutional right is at issue in the first instance should be addressed. *Drake v. Scott,* 812 F.2d 395, 398–399 (8th Cir.1987), *modified on rehearing on other grounds,* 823 F.2d 239, *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). *See also, Craft v. Wipf,* 836 F.2d 412, 416 n. 1 (8th Cir.1987); *Moreno v. Small Business Administration,* 877 F.2d 715 (8th Cir.1989). If the undisputed facts in the case before us fail to show the deprivation of any constitutional right as a matter of law then the defendants did not violate a clearly established right, *Drake v. Scott, supra,* and are immune. Thus, we first address whether the undisputed relevant facts show a legally cognizable claim for relief.

The plaintiff alleged: "That acts of all defendants were in violation of 42 USC Section 1983, as well as the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, and constituted cruel and unusual punishment."

■ The defendants did not "violate" 42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The plaintiff was not denied the remedy of § 1983 as he filed such an action.

Neither did they violate the plaintiff's rights under the Fifth Amendment. The

Fifth Amendment is a limitation on the federal government, *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), except to the extent such provisions have been incorporated via the 14th Amendment as applicable to the States. *See, Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (double jeopardy), *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (self-incrimination). No facts have been raised by any party as would require an analysis of the provisions of the Fifth Amendment. *See, Architectural Building Components Corp. v. Comfort,* 528 P.2d 307, 310 (Okla. 1974); and *Atchison, Topeka & Santa Fe Ry. Co. v. Corporation Commission,* 658 P.2d 479, 482 (Okla.1983).

Nor did the defendants violate the plaintiff's rights granted by the Eighth Amendment as to cruel and unusual punishment. The United States Court of Appeals for the Seventh Circuit explained the protection afforded to prisoners by the Eighth Amendment in *Wells v. Franzen,* 777 F.2d 1258 (7th Cir.1985).

"The eighth amendment protects prisoners from, *inter alia,* (1) wanton infliction of pain, *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976), (2) deliberate indifference to serious medical needs, *Estelle v. Gamble,* 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976), and (3) shocking prison conditions, *Rhodes v. Chapman,* 452 U.S. 337, 345–47, 101 S.Ct. 2392, 2398–99, 69 L.Ed.2d 59 (1981)." *Id.* 777 F.2d at 1263–1264.

The first two are alleged to be implicated in the case before us; the third is not.

■ The plaintiff's testimony is clear that he alleges the driver to have been negligent in making the stop. Negligence is clearly insufficient to show an Eighth Amendment claim. In *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292, negligence by a physician in treating a prisoner was held insufficient to state an Eighth Amend-

---

**6.** One exception to this analysis is that a defendant is entitled to qualified immunity when the plaintiff's complaint alleges the commission of acts that violated clearly established law and

discovery fails to uncover evidence that the defendant did in fact commit the alleged acts. *Mitchell v. Forsyth,* 472 U.S. at 526, 105 S.Ct. at 2815–2816.

ment claim. The plaintiff's complaint of an infliction of pain as a result of the driver turning three corners in a careless manner is also inadequate. Conduct of a prison official is not considered cruel and unusual punishment "unless great discomfort is occasioned deliberately as punishment or mindlessly, with indifference to the prisoner's humanity." *Jackson v. Cain*, 864 F.2d 1235, 1243 (5th Cir.1989). The plaintiff admitted that the driving did not amount to a deliberate act of punishment. Nor do we find an indifference to plaintiff's humanity by the driver's conduct. *See, Duckworth v. Franzen*, 780 F.2d 645 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986), wherein the court concluded that the conduct of officials in transporting prisoners did not violate the Eighth Amendment although prisoners received injuries when they were handcuffed, chained, and physically restricted to a bus which caught fire. We find that the driver's actions in going through the stop sign and negotiating three turns in an allegedly careless manner while transporting prisoners does not amount to wanton infliction of unnecessary pain under these facts.

■ With regard to the claim against the physician's assistant, the medical notes show that the plaintiff's surgical wound healed without medical complications except for the abcess which was successfully treated. The notes of the physician's assistant show that the plaintiff was examined upon arrival at the prison infirmary and prescribed medication.

In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court said:

"We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia, supra* [428 U.S.], at 182–183, 96 S.Ct. 2909 [96 S.Ct. at 2925], 49 L.Ed.2d 859 (joint opinion), proscribed by

the Eighth Amendment." *Id.* 429 U.S. at 104, 97 S.Ct. at 291.

The record shows an absence of a serious medical need on the part of the plaintiff, and without such a showing the plaintiff's claim against the physician's assistant is clearly insufficient.

■ Finally, it is manifest that the petitioners did not violate the plaintiff's rights granted by the Fourteenth Amendment. Mere allegations of negligence are insufficient to state a claim for a deprivation of the Due Process Clause of that provision. *Wilhelm v. Gray*, 766 P.2d 1357 (Okla. 1988). No facts have been raised as to require an analysis of the other provisions of the Fourteenth Amendment. *See, Architectural Building Components Corp. v. Comfort, supra*, and *Atchison, Topeka & Santa Fe Ry. Co. v. Corporation Commission, supra*.

### Conclusion.

The petitioners are immune from suit unless their actions violated clearly established constitutional law. *Mitchell v. Forsyth, supra*. The evidence before the trial court compels the conclusion that the petitioners did not violate the Constitution. Thus, they did not violate clearly established law and are immune from suit and liability for damages in their individual capacities.[7] A writ of prohibition will issue to prohibit a court from proceeding with an action against immune defendants. *Powell v. Seay*, 553 P.2d 161 (Okla.1976). We grant a writ of prohibition and prohibit the respondent or any other assigned judge of the District Court of Cleveland County from proceeding with the plaintiff's § 1983 action against the petitioners herein.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN, ALMA WILSON and KAUGER, JJ., concur.

SIMMS, J., concurs in result.

OPALA, V.C.J., dissents.

---

7. In *Will v. Michigan Department of State Police*, —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Court said: "[w]e hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* 109 S.Ct. at 2312. The plaintiff's § 1983 suit for damages against the petitioners in their official capacities is not legally cognizable.

OPALA, Vice Chief Justice, dissenting.

The court broadly pronounces today that the plurality's opinion in *Mitchell v. Forsyth* [1]—inasmuch as it is followed by the circuit jurisprudence—requires a prejudgment review of *all* nisi prius rejections of qualified privilege asserted by public officials in § 1983 actions.[2] In an original proceeding to review the nisi prius order denying the petitioners' claims of qualified immunity, the court holds that these petitioners did not violate clearly established law and are hence immune from § 1983 suit. In my view, *no mandate* to advance the review sought here is found in the *Mitchell* plurality's opinion nor in the case law of the circuits. Even if we stood today under a federal-law command to afford immediate review of a denied § 1983 qualified-privilege plea, the evidentiary materials supplied in this case are not consistent with one petitioner's (McLin's) nonliability. I hence recede from the court's opinion and from its across-the-board judgment of absolution.

**1.** 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 [1985], a plurality opinion by White, J., in which Burger, C.J., and Blackmun and O'Connor, JJ., joined.

**2.** 42 U.S.C. § 1983.

**3.** *Mitchell v. Forsyth, supra* note 1, 472 U.S. at 528 n. 9, 105 S.Ct. at 2817; see also (Brennan, J., *concurring in part and dissenting in part*), 472 U.S. at 550, 105 S.Ct. at 2828.

**4.** The right to trial by jury depends on whether a § 1983 claim for damages may be characterized as "legal" in the 7th Amendment sense. There can be no doubt that § 1983 actions create tort liability, with damages measured by the *ex delicto* standards of the common law. *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 305–307, 106 S.Ct. 2537, 2542–2543, 91 L.Ed.2d 249 [1986]. *Cf. Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 [1974], where the Court holds that because a Title VIII action for damages sounds in tort, it is "legal" for 7th amendment purposes; *but* the right to trial by jury in Title VII cases *remains unsettled. Lytle v. Household Manufacturing Inc.,* 494 U.S. ——, ——, 110 S.Ct. 1331, 1335, n. 1, 108 L.Ed.2d 504 [1990]. For *other recent 7th Amendment jurisprudence,* see *Tull v. U.S.,* 481 U.S. 412, 417–425, 107 S.Ct. 1831, 1835–1839, 95 L.Ed.2d 365 [1987]; *Granfinanciera, S.A. v. Nordberg,* 492 U.S. ——, ——, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 [1989].

## I

## THE PLURALITY VIEW IN *MITCHELL* IS NOT A MANDATE TO STATE COURTS

The plurality's opinion in *Mitchell* holds that qualified privilege in § 1983 actions is the functional equivalent of an immunity-from-suit defense. An immunity-from-suit plea presents an issue fit for pretrial resolution at nisi prius *only when the facts tendered are undisputed and will support but a single inference which is consistent with nonliability.*[3] When the facts are in dispute, or are uncontroverted but raise conflicting inferences, a qualified-privilege plea tenders but a fact issue on the merits of a § 1983 defense. The submission of this defense to the trier is commanded in federal courts by the 7th Amendment, U.S. Const., and in state courts by Art. 2, § 19, Okl. Const.[4]

A state court must apply only those norms of federal procedure which are obligatory to meet the minimum standards of U.S. fundamental law.[5] Just because fed-

*Perez–Serrano v. DeLeon–Velez,* 868 F.2d 30, 32–33 [1st Cir.1989], holds that in a § 1983 action for both damages and injunctive relief *the liability issue* is for the jury; of similar import is *Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 440–441 [1st Cir.1989].

The terms of Art. 2, § 19, Okl. Const., provide in pertinent part:

"The right of trial by jury shall be and remain inviolate ..."

Since in this state-court case the plaintiff's right to trial by jury is governed not by the 7th Amendment, U.S. Const., but by Art. 2, § 19, Okl. Const., it is not amiss to call attention to *Wetsel v. Independent School Dist. I–1,* Okl., 670 P.2d 986, 990–991 [1983], holding that where the duty claimed to have been breached rests on a standard that *is not legally fixed* but may be characterized as variable because it shifts with the circumstances of the case, the parameters of duty remain undefined as a matter of law and the presence or absence of offending conduct tenders an issue for jury resolution. *Ponca City Ice Co. v. Robertson,* 67 Okl. 86, 169 P. 1111, 1113 [1917]; *City of Cushing v. Stanley,* 68 Okl. 155, 172 P. 628 [1918]; *Sand Springs Ry. Co. v. Cole,* Okl., 279 P.2d 938, 942–943 [1955]; *Lee v. Darden,* Okl., 421 P.2d 845, 848 [1966]; *Federer v. Davis,* Okl., 434 P.2d 197, 198–199 [1967].

**5.** By force of the Supremacy Clause, Art. 6, cl. 2, U.S. Const., state courts are bound by the U.S. Supreme Court's jurisprudential exposition of

eral courts afford prejudgment appellate review under an appealability rubric prescribed by them for that system or commanded by their supervisory authority—the U.S. Supreme Court[6]—state courts need not follow suit.

Even if this court decides today to follow the circuit jurisprudence *voluntarily* —i.e. *sans* the U.S. Supreme Court's command—it should do so *only* (a) where an accelerated decision on the immunity-from-suit question is *absolutely essential* to free a § 1983 defense from some *impermissibly* imposed state procedural burden[7] or (b) if pretrial review of a denied immunity guest were to be perceived as necessitated by some federal constitutional norm.

Although the U.S. Constitution contemplates federal claims' cognizance by state courts—unless the Congress, acting in the exercise of its Supremacy Clause powers, expressly withdraws this inherent authority—our dual sovereignty scheme does not require that in the prosecution of federal claims state and federal procedure be identical.[8] *Not all* departures from federal procedure must be viewed as fatal in the sense that they pose an obstacle to the prosecution or defense of a federal claim. *Only* when state procedure deprives a federal-claim litigant of a substantive-law right will federal law preempt conflicting state procedure in § 1983 actions.

I cannot, at this stage of the U.S. law's development, consider an accelerated pretrial review of § 1983 immunity-from-suit pleas to be a constitutional *sine qua non* in state-court systems. Neither would I view a state *rejection* of the accelerated-review jurisprudence of the circuits as an impermissible state-law barrier—within the meaning of the Supremacy Clause—to a meaningful opportunity for a § 1983 defendant to press effectively a meritorious qualified-privilege plea on undisputed facts consistent with his/her nonliability.

Federal due process does not mandate that appellate remedy be afforded *at any litigation stage.*[9] I could join today's pronouncement only if unavailability of pretrial appellate review for rejected immunity pleas could be viewed as depriving a § 1983 defendant of due process or as impairing his/her opportunity effectively to raise a

federal law. See *United States v. Home Federal S. & L. Ass'n of Tulsa,* Okl., 418 P.2d 319, 325 [1966]; *Dean v. Crisp,* Okl.Cr., 536 P.2d 961, 963 [1975]; see also *Walker v. Maruffi,* 105 N.M. 763, 737 P.2d 544, 547 [App.1987].

A plurality's opinion is not precedential or binding—not even for the federal-court system. See *United States v. Friedman,* 528 F.2d 784, 788 [10th Cir.1976], citing *Hertz v. Woodman,* 218 U.S. 205, 30 S.Ct. 621, 623, 54 L.Ed. 1001 [1910]; *United States v. Pink,* 315 U.S. 203, 216, 62 S.Ct. 552, 558, 86 L.Ed. 796 [1942]; see also in this connection, Davis & Reynolds, Juridical Cripples: Plurality Opinions in the Supreme Court, 1974 Duke L.J. 59; Note, Plurality Decisions and Judicial Decisionmaking, 94 Harv.L.Rev. 1127 [1981]; Note, The Precedential Value of Supreme Court Plurality Decisions, 80 Colum.L. Rev. 756 [1980].

**6.** The U.S. Supreme Court exercises supervisory jurisdiction over lower federal courts. See, e.g., *Sherman v. United States,* 356 U.S. 369, 381, 78 S.Ct. 819, 825, 2 L.Ed.2d 848 [1958]; *Humphreys v. State,* Okl.Cr., 512 P.2d 197, 199 [1973].

Thus far, the U.S. Supreme Court's "clear signal" for review of a rejected prejudgment qualified-immunity plea has targeted *only* the federal judicial system. See *Adams v. Jasinski,* 473 U.S. 901, 105 S.Ct. 3518, 87 L.Ed.2d 646 [1985], where a federal court's dismissal of a prejudg-

ment qualified-immunity plea appeal was vacated and the case remanded "in light of *Mitchell v. Forsyth....*" (Emphasis in original.) A like command has yet to be beamed at state courts. The *Adams* signal may have been unnecessary. At the time of *Mitchell,* the circuits appear to have already developed *independent* jurisprudence running along a track parallel with the *Mitchell* plurality. See *Floyd v. Farrell,* 765 F.2d 1, 2–3 [1st Cir.1985].

**7.** In *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 [1988], Wisconsin's statutory law was deemed to be an impermissible obstacle in the path of a § 1983 plaintiff. The Court held that state-law barriers cannot stand when they *impair* the prosecution of a federal claim. A recent opinion in *Howlett v. Rose,* —— U.S. ——, 110 S.Ct. 2430, 110 L.Ed.2d 332 [1990], clearly demonstrates the same principle. There, the Court pronounced that state-law immunities may not be used to hinder the prosecution of a state-court § 1983 suit.

**8.** *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. ——, ——, 110 S.Ct. 1566, 1568, 108 L.Ed.2d 834 [1990]; *Tafflin v. Levitt,* 493 U.S. ——, ——, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 [1990].

**9.** *Lindsey v. Normet,* 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 [1972].

qualified-immunity defense. Because federal appellate procedure that affords pretrial review of some qualified-privilege claims is without any constitutional anchor—in either Due Process Clause or in the Supremacy Clause—I would not today extend its teachings to govern Oklahoma's judicial system.

## II

### TODAY'S DECISION ON THE QUALIFIED–PRIVILEGE DEFENSE DOES NOT REST ON *UNDISPUTED FACTS* FROM WHICH BUT A SINGLE INFERENCE MAY BE DRAWN

The court rests its pronouncement of the petitioners' nonliability solely on the instruments attached to the amended application for assumption of original jurisdiction. The petitioners' brief does not inform us that this paperwork constitutes *all* the evidentiary material that was before the trial court when it denied summary relief. Even if we were to follow *Mitchell,* I could not conclude that the content of the instruments supports but a single inference that is consistent with defendant McLin's nonliability under § 1983, based on his qualified-privilege defense.

The prisoner-plaintiff in this § 1983 suit [10] underwent *neck and back surgery three days before he was transported with several other prisoners back to the Lexington correctional facility.* While still recuperating from surgery, the prisoner was picked up at the hospital. In the course of the trip the driver [defendant McLin] is alleged to have been in a hurry to return to Lexington. He drove in a reckless fashion. Coming upon a stop sign, McLin slammed on his brakes, throwing nearly all the prisoners "from one seat into another".[11] Then realizing he was already out into the middle of the intersection, McLin quickly accelerated, "throwing [them] . . . into the back of the seat." The prisoner, who believed he had reinjured his neck in that episode of erratic driving, asked for medical attention. His request went unheeded, and the driver continued to speed back to the facility, taking a shortcut route, making several sharp turns and hitting potholes. When the prisoner asked McLin to slow down or quit hitting the brakes, the driver gave no response other than to "laugh and pay no attention to [his request] . . . and go right on with what he was doing."

Given the prisoner's impaired health status, this scenario raises in my view a fact issue—i.e., whether the driver's conduct had occasioned "great discomfort . . . mindlessly, with indifference to the prisoner's humanity." [12] Because conflicting inferences may be drawn from these undisputed facts, I would not today uphold McLin's qualified-privilege plea by granting him summary relief.

## III

### IF THE U.S. SUPREME COURT WERE TO MANDATE FOR THE STATE COURTS THE *MITCHELL* PRETRIAL REVIEW REGIME, THE STATUS OF REVIEWABLE DECISIONS SHOULD BE BROUGHT UNDER THE SAME STATE–LAW FINALITY RUBRIC AS THAT DE-

---

**10.** The prisoner based his § 1983 claim on McLin's violation of his Eighth Amendment right to be free from cruel and unusual punishment.

**11.** Excerpts from the prisoner's deposition testimony were attached to the petitioners' amended application to assume original jurisdiction. It is not known whether the deposition was on file in the trial court. Abstracts from an unfiled deposition may not be used as evidentiary material without a stipulation by the parties. See *Hulsey v. Mid–American Preferred Ins. Co.,* Okl., 777 P.2d 932, 935–936 [1989].

**12.** This is the test the court applies today to govern § 1983 claims grounded on the 8th Amendment. It is a standard followed in *a single* federal circuit. *Jackson v. Cain,* 864 F.2d 1235, 1243 [5th Cir.1989].

The degree of care that should be exercised under the "mindless cruelty" test for 8th Amendment claims is not defined by fixed legal standards; the parameters of duty are *variable* in that they shift with the circumstances. See *Wetsel v. Independent School Dist. I–1, supra* note 4, for explanation of the variable-standard norms of liability. Whether defense proof does in this case demonstrate privileged conduct vis-a-vis the recovering prisoner while he was *en route* to the destination must be measured by the variable standards that define offending conduct (mindless cruelty) in the 8th Amendment sense. Under Art. 2, § 19, Okl. Const., "mindless cruelty" presents here an issue clearly for the jury.

FINED IN *WYBRANT*[13]

If the U.S. Supreme Court were to hold in the future that, whenever a qualified privilege—resting on undisputed facts that are consistent with nonliability—is unsuccessfully pressed in a state-court § 1983 claim, an immediate appellate review is federally mandated, I would *then* bring the new remedy under the same state-law finality rubric as that pronounced in *Town of Ames v. Wybrant.*[14] *Wybrant* holds that a nisi prius prejudgment order must be deemed "final" in the § 953[15] sense if its rendition represents an essential prerequisite for the court's assumption of adjudicative power over the case at hand. The court should not today *distort* (or disturb) the symmetry of this state's appealability regime by imposing an unwarranted and self-generated exception to Rule 1.50,[16] which prohibits, across the board, appeals from summary judgment denials.

In sum, confronted by no more than a "faint signal" from the *Mitchell* plurality's opinion, and by circuit jurisprudence that is not binding on state-court systems,[17] I would not adopt today the norm of mandatory pretrial review of rejected qualified immunity pleas in § 1983 actions. Neither *Mitchell* nor the extant circuit jurisprudence calls for the corrective relief afforded by the court in this case. Even if the petitioners' pleas were properly before us for review, I would, on this record, hold the evidentiary material to be unsupportive of defendant McLin's quest for summary judgment on his qualified-privilege defense against one prisoner's § 1983 claim based on a violation of his 8th Amendment right.

---

**13.** 203 Okl. 307, 220 P.2d 693, 696 [1950].

**14.** *Supra* note 13. Although a trial court's determination of the right to condemn is not *stricto sensu* a final order—since a jury trial on the condemned property's value may be necessary—we held in *Wybrant* that, because the right to condemn is an essential prerequisite for assumption of the court's adjudicative power in condemnation, an order upholding the right to condemn is to be treated as final under 12 O.S.1981 §§ 952 and 953.

**15.** The pertinent terms of 12 O.S.1981 § 952(b) are:
"(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:
(1) A final order; * * * *
The terms of 12 O.S.1981 § 953 are:
"An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and *an order affecting a substantial right, made in a special proceeding* or upon a summary application in an action after judgment, *is a final order,* which may be vacated, modified or reversed, as provided in this article." (Emphasis added.)

**16.** The terms of Rule 1.50, Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2, provide in pertinent part:
" * * * No certified interlocutory order shall be considered if taken from an order overruling a motion for summary judgment."

See *Eason Oil Co. v. Howard Engineering,* Okl., 755 P.2d 669, 672–673 [1988].

**17.** Because under our dual sovereignty system the power to review the decisions of state courts of last resort (on federal-law questions) resides solely in the U.S. Supreme Court, *only that Court's commands represent to us binding federal authority. United States v. Home Federal S. & L. Ass'n of Tulsa, supra* note 5 at 325; *Dean v. Crisp, supra* note 5 at 963. A United States District Court may not entertain an appeal from judgments in the highest court of a state. Only the United States Supreme Court may exercise such review, and then only in cases within its jurisdiction. See *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *In re Asbestos Litigation,* 829 F.2d 1233 (3rd Cir.1987). Absent Supreme Court precedent, we follow, *as a matter of comity,* the Tenth Circuit opinions on substantive federal law and that court's constitutional jurisprudence applicable to the states. *Phillips v. Williams,* Okl., 608 P.2d 1131, 1135 [1980]. The voluntary deference we pay to our circuit's pronouncements prevents federal law from being dichotomized within the State of Oklahoma into different bodies of legal norms—that applied in Oklahoma courts and that which governs federal courts sitting within this state.