Ira PHILLIPS, Dave Renfro, The Department of Labor for the State of Oklahoma, and The State of oklahoma, Petitioners,

v.

The Honorable Jane WISEMAN, Judge of the Fourteenth (14th) Judicial District, and Frank Bisby, Respondents.

No. 80076.

Supreme Court of Oklahoma.

July 20, 1993.

Susan B. Loving, Atty. Gen., Rabindranath Ramana, Asst. Atty. Gen., Oklahoma City, for petitioners.

John B. Nicks, Tulsa, for respondent Frank Bisby.

SUMMERS, Justice.

When the Deputy Labor Commissioner for Tulsa was fired by the incoming State Labor Commissioner he filed suit in District Court, claiming that his dismissal was for political reasons in violation of his First Amendment rights. The defendant/Commissioner now seeks a writ of prohibition in this Court based upon the doctrine of qualified immunity. The defendant/State of Oklahoma also claims immunity. Original jurisdiction is assumed and we issue the relief requested by defendants.

The plaintiff, Frank Bisby, was employed as Deputy Commissioner of Labor for the Oklahoma State Department of Labor, at the Department's Tulsa office. In May of 1990 Governor Henry Bellmon appointed Ira Phillips to the office of Labor Commissioner for the State Department of Labor. Phillips requested Bisby's resignation as Deputy Commissioner. Bisby refused and when Phillips fired him, Bisby sued. In his defense Phillips stated that he "wanted to bring my own people on because I had my own agenda and wanted someone who I thought could help me carry out that agenda." Phillips did not know Bisby prior to

Phillips' appointment. Phillips also stated that prior to his appointment he had plans to require the resignation of the Deputy Commissioner in the Tulsa office along with all other unclassified employees in the department.[1]

Bisby alleged that Phillips brought in his own people so that they would campaign on behalf of Phillips. In other words, Bisby claims that he was fired because of his lack of political affiliation with Phillips, which he claims was in violation of the Constitution.

In *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) the High Court reviewed its opinions in this area:

> In *Elrod [v. Burns]*, *supra* [427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)], we decided that a newly elected Democratic sheriff could not constitutionally engage in the patronage practice of replacing certain office staff with members of his own party "when the existing employees lack or fail to obtain requisite support from, or fail to affiliate with, that party." ... The plurality explained that conditioning public employment on the provision of support for the favored political party "unquestionably inhibits protected belief and association."
>
> ... *The plurality also found that a government can meet its need for politically loyal employees to implement its policies by the less intrusive measure of dismissing, on political grounds, only those employees in policymaking positions....*
>
> Four years later, in *Branti [v. Finkel]*, *supra* [445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)], we decided that the First Amendment prohibited a newly appointed public defender, who was a Democrat, from discharging assistant public defenders because they did not have the support of the Democratic Party.... "In sum," we said, "there is no

---

1. State employees are labeled as unclassified or classified for purposes of the Oklahoma Personnel Act. 74 O.S.Supp.1986 § 840.7.

requirement that dismissed employees prove that they, or other employees, have been coerced into changing, either actually or ostensibly, their political allegiance." ... To prevail, we concluded, public employees need show only that they were discharged because they were not affiliated with or sponsored by the Democratic Party.

*Id.*, 497 U.S. at 68–71, 110 S.Ct. at 2734–35 (material omitted, emphasis and citations added).

This language shows that a public employee may not be fired because he or she does not belong to, or affiliate with, a particular political organization. But note that this language also shows the exception when the employee is in a policymaking position.

■ The exception was explained by the Court in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

It is equally clear that party affiliation is not necessarily relevant to every policymaking or confidential position. The coach of a state university's football team formulates policy, but no one could seriously claim that Republicans make better coaches than Democrats, or vice versa, no matter which party is in control of state government. On the other hand, *it is equally clear that the Governor of a State may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments.* In sum, the ultimate inquiry is not whether the label "policymaker" or confidential" fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Id.*, 445 U.S. at 518, 100 S.Ct. at 1295 (emphasis added).

Thus, our case comes down to one question: Have the petitioners shown that political affiliation is an appropriate require-ment for the effective performance of the Deputy Commissioner of Labor? We find that they have.

The petitioner/Commissioner argued that "it is uncontroverted that the Deputy Commissioner serves as a representative of the Commissioner of Labor with labor, management, business groups, with the state legislature, and with the media." It was also pointed out that the Deputy Commissioner of Labor represented the Commissioner and the Department at meetings for the purpose of explaining new rules, regulations, or Department policies. The respondent/plaintiff does not controvert this description of his duties. These duties of the Commissioner correspond to those cited by the United States Supreme Court in *Branti* as an example of when an assistant's political affiliation may be an appropriate requirement for that position. *Id.*, 445 U.S. at 518, 100 S.Ct. at 1295. We conclude that the position of Deputy Labor Commissioner comes within the *Branti* exception.

■ The U.S. Supreme Court expounded upon the doctrine of qualified immunity in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) and *Wyatt v. Cole*, —— U.S. ——, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Qualified immunity as it applies to civil rights suits "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity it is effectively lost if a case is permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

■ In *McLin v. Trimble*, 795 P.2d 1035 (Okla.1990) we explained that qualified immunity shields an official from damages insofar as the official's conduct did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.*, 795 P.2d at 1036. We also explained that upon an asserted qualified immunity defense "the question of whether a constitutional right is at issue in the first instance should be addressed." *Id.*, 795 P.2d at 1042. In this case no First Amendment right is at issue, and thus Phillips is im-

mune from liability for damages in his individual capacity.[2] The respondent judge is thus prohibited from proceeding with the civil rights claim for damages against Phillips.

The Defendant/State of Oklahoma argues that it too is entitled to qualified immunity from suit on Bisby's second cause of action for wrongful discharge under state law. The state relies upon 51 O.S.1991 § 153 which states in part: "The state shall be liable ... if a private person or entity, would be liable for money damages under the laws of this state." The state argues that since Phillips is immune it likewise should be immune. We disagree as to the state's theory.

We have explained that the state Governmental Tort Claims Act and 42 U.S.C. § 1983 provide a "double-barreled system", and that escaping liability under one does not necessarily mean that a party also escapes liability under the other. *Willbourn v. City of Tulsa*, 721 P.2d 803, 805 (Okla.1986). Section 153 does not equate liability under that section with liability under 42 U.S.C. § 1983, but imposes it "under the laws of this state." This means that the proper analysis is whether the State agency may be sued for a wrongful discharge under the laws of the *state* under these circumstances.

Bisby was an unclassified employee at-will, and liability under state law in dismissing him from employment would arise if such dismissal violated public policy. *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla.1989); *Vannerson v. Board of Regents of University of Oklahoma*, 784 P.2d 1053, 1054–1055 (Okla.1989). The only public policy argument available in this case would have to rest upon the First Amendment and Bisby's non-affiliation with Phillips and his followers. Because we have found no First Amendment violation it follows that no claim for a public policy violation predicated upon the First Amendment is involved here. The State is not liable for Bisby's discharge under 51 O.S.1991 § 153, and thus has sovereign immunity under 51 O.S.1991 § 152.1.[3]

In sum, the respondent judge, or any other assigned judge of the District Court, is prohibited from proceeding on Bisby's first cause of action for damages against Phillips in his individual capacity, and is further prohibited from proceeding against the State of Oklahoma and the Department of Labor on the wrongful discharge cause of action.

LAVENDER, V.C.J., and SIMMS, WILSON, KAUGER, SUMMERS and WATT, JJ., concur.

HODGES, C.J., and HARGRAVE, J., concur in result.

---

**2.** A claim for *damages* under 42 U.S.C. § 1983 against an official in the official's official capacity is not cognizable. *Mclin v. Trimble*, 795 P.2d 1035, 103 n. 7 (Okla.1990). A § 1983 suit against the *State* is likewise not cognizable. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

**3.** Section 152.1 states:

A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.

B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions. In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.