OSCN Found Document:IN THE MATTER OF B.D.W.

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 IN THE MATTER OF B.D.W.
2014 OK CIV APP 59
Case Number: 112032
Decided: 05/14/2014
Mandate Issued: 06/11/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 59, __ P.3d __

IN THE MATTER OF B.D.W. AND H.W., Alleged Deprived Children:

CHARLIE WILCOX, Appellant,
v.
STATE of OKLAHOMA, WASHITA COUNTY, Appellee.

APPEAL FROM THE DISTRICT COURT OF
WASHITA COUNTY, OKLAHOMA

HONORABLE CHRISTOPHER S. KELLY, JUDGE

REVERSED AND REMANDED

Ryan A. Meacham, Clinton, Oklahoma, for Appellant,
Brooke S. Gatlin, Arapaho, Oklahoma, for Appellee.

Larry Joplin, Presiding Judge:

¶1 Charlie Wilcox, Appellant/Father, seeks review of the trial court's order sustaining, upon the jury's verdict, the State's petition to terminate his parental rights to B.W. (born March 25, 2009) and H.W. (born June 15, 2007). Father argues the court improperly denied his due process right to testify at the trial seeking termination of his parental rights. Father argues his constitutionally protected interest in his relationship with his children was violated and he was denied a meaningful opportunity to defend himself when he was prevented from testifying, a violation of his right or opportunity to be heard.

¶2 "In passing upon a claim that the procedure used in a proceeding to terminate parental rights resulted in a denial of procedural due process, we review the issue de novo. ... De novo review requires an independent, non-deferential re-examination of another tribunal's legal rulings." In the Matter of A.M. and R.W., 2000 OK 82, ¶6, 13 P.3d 484, 486-87.

¶3 The State filed a petition to terminate Father's parental rights in November 2012. B.W. had been removed from Father's home in November 2010, following a home inspection where the Department of Human Services (D.H.S.) recommended removal to the court, due to unsanitary and unsafe conditions at the home Father and son shared. At the time he was removed, B.W. was eighteen months old. The deprived adjudication was based on the following: (1) Father's failure to maintain a safe and sanitary home; (2) failure to maintain a home free from illegal substances and alcohol; and (3) failure to protect the child from harm.

¶4 The State sought termination of Father's parental rights in November 2012 due to failure to correct the deprived conditions, abandonment, and failure to contribute support. With respect to H.W., the basis of termination rested on Father's failure to correct the conditions that led to B.W. being adjudicated as deprived.[1] D.H.S. first sought the children's reunification with Father and implemented an Individualized Service Plan (ISP) in an effort to bring Father to a degree of parental competency wherein he could properly care for B.W. and H.W. The ISP included securing employment, drug and alcohol counseling, maintaining visitation with the children, and providing a safe and secure home. Father was in contact with D.H.S. in furtherance of these ISP goals for some period of time, but he then moved to another state, after which Father failed to maintain contact with D.H.S., failed to visit the children, and failed to complete the ISP goals.

¶5 In January 2013, approximately two months after the State filed its petition to terminate his parental rights, Father was incarcerated in Texas for a probation violation relating to a previous forgery conviction. His release was scheduled for January of 2014.

¶6 The jury trial on Father's termination of parental rights began May 28, 2013. At a hearing prior to trial, Father's counsel requested Father be transported to the trial from his place of incarceration in Texas or in the alternative be able to participate via phone or by some other means, including video. The trial court agreed Father could attend the trial by phone, but denied Father the opportunity to testify by phone, stating:

I am - he will not be allowed to make statements or to testify because we are talking about a jury trial here, and I think it is important that if a person is going to testify in front of a jury, I think the jury must be able to consider their demeanor, their - whether or not they're being truthful based upon their actions when they're testifying rather than just the words they give.

At the start of trial, Father's counsel renewed the objection to his client's inability to testify, asking trial be continued several months until Father would be released or permit him to testify via phone. At the conclusion of the trial, the jury returned a verdict terminating Father's parental rights with respect to both B.W. and H.W.

¶7 Father's overarching proposition of error on appeal alleges he was denied due process when the trial court prevented him from testifying at the trial to terminate his parental rights. This court will engage in a two-step inquiry to determine if Father was denied procedural due process. In the Matter of A.M. and R.W., 2000 OK 82, ¶7, 13 P.3d 484, 487. First, we must consider whether the individual possessed a protected interest to which due process protection applies. Id. Second, if such protection does apply, was the individual afforded an appropriate level of due process. Id.

¶8 In the context of this termination of parental rights proceeding, we answer this first question affirmatively; "Parents have a constitutionally protected liberty interest in the continuity of the legal bond with their children. In re Delaney, 1980 OK 140, 617 P.2d 886, 890; In re Christina T., 1979 OK 9, 590 P.2d 189. 'The fundamental nature of parental rights requires that the full panoply of procedural safeguards must be applied to child deprivation hearings.' In re Chad, 1978 OK 94, 580 P.2d 983, 985." In the Matter of A.M., 13 P.3d at 487.

¶9 With respect to the second inquiry, the Oklahoma Supreme Court has determined this question should be examined on a case-by-case basis. In the Matter of A.M., 13 P.3d at 487.

The only absolute due process requirements in a termination case are prior notice of the hearing, an opportunity to be heard, and the right to effective assistance of counsel. See id.; Tammie v. Rodriguez, 1977 OK 182, 570 P.2d 332. We review other procedural claims by determining whether the party was afforded the essence of procedural due process, that is, a "meaningful and fair opportunity to defend." In re A.M., 2000 OK 82 at ¶ 9, 13 P.3d at 487. Due process is not a static concept, but is determined according to the facts and circumstances of each case. McLin v. Trimble, 1990 OK 74, 795 P.2d 1035 (citing Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976)).

In re K.N.L., 2007 OK CIV APP 22, ¶11, 154 P.3d 1276, 1279 (emphasis added).

¶10 In looking at whether denying Father the opportunity to testify violated Father's due process right to be heard, the Oklahoma Supreme Court has adopted the three part balancing test set forth in Matthews v. Eldridge, 424 U.S. at 334-335. "First, a court must consider the private interest that will be affected by the state's action; second, the court must consider the risk of erroneous deprivation of the interest posed by the procedures used and the probable value, if any, that additional or substitute procedures would provide; and third, the court must consider the governmental interest at stake." In re K.N.L., 154 P.3d at 1280 (citing In the Matter of A.M., 13 P.3d at 487-88).

¶11 In examining the first part of the Matthews test, the Oklahoma appellate courts have found parental rights to be a constitutionally protected liberty interest and an extremely important private right. In the Matter of A.M., 13 P.3d at 487; In re K.N.L., 154 P.3d at 1280. At the same time, in examining the third part of the Matthews test, the child has a right to a stable family environment, permanency, and the opportunity to be adopted. In re K.N.L., P.3d at 1280. The duration of a parent's incarceration is a factor the court may consider in determining whether the continuation of the parental relationship would result in harm to the child, though incarceration itself "shall not" be sufficient to deprive a parent of parental rights. 10A O.S. Supp.2009 §1-4-904(B)(12). In this case, the duration of Father's proposed sentence was relatively brief, as his release was scheduled to occur about seven months after the trial.

¶12 The trial court and the State appeared unwilling to continue the jury trial until after Father's release, the State arguing B.W. had already been in State custody for two years and Father had yet to achieve the ISP goals. However, the trial court did not permit any of the alterative testimony procedures requested by Father's counsel, including testifying by phone or video.

¶13 Oklahoma demands a parent who faces the loss of their parental rights be permitted an opportunity to be heard at the trial, although the right to be heard does not necessarily have to be in person. In re K.N.L., 154 P.3d at 1281 ("An incarcerated parent does not have an absolute constitutional right to be present at a termination hearing, if through the exercise of reasonable diligence his presence cannot be secured within a reasonable time period and alternate effective procedures are available to protect his or her fundamental right to 'meaningful access' and an opportunity to defend."). A meaningful opportunity to be heard can be protected through the use of alterative means, including presentation of a written trial deposition, testimony by videotape or videotaped deposition, or testifying via phone. In re K.N.L., 154 P.3d at 1280.

¶14 The question remains, when all these alternative means of testimony are foreclosed to a parent, as occurred in this case, does it implicate the second prong of the Matthews test, wherein the court must consider the risk of erroneous deprivation of the Father's liberty interest by the procedure used and the probable value additional or substitute procedures would provide. We answer in the affirmative. The risk of erroneous deprivation of Father's "absolute due process" right to be heard is great where Father was entirely prevented from testifying at trial. Tammie v. Rodriguez, 1977 OK 182, 570 P.2d 332, 334; In re K.N.L., 154 P.3d at 1279. This is especially true, if as in this case, no alterative procedure was implemented to allow Father to testify. Father's counsel provided the court with several alternative means of allowing Father's testimony, including simply testifying by phone, as phone arrangements were already in place.

¶15 We have found no case in Oklahoma, and Appellee has provided none, where the Oklahoma appellate court allowed complete deprivation of a parent's right to testify in a termination proceeding. In reviewing a number of other jurisdictions, we have found only one case in which the appellate court appeared to allow termination of parental rights to stand without permitting the father an opportunity to testify. In the Matter of Adoption of J.L.P., 774 P.2d 624, 629 (Wyo. 1989).[2] However, this case is not analogous to the instant matter. In J.L.P., the father's rights were summarily terminated upon the court's finding that Father had been convicted of multiple rape offenses, including the rape of a minor; and the father was incarcerated with a release date set so far into the future the child would have reached adulthood before the father would meet his minimum sentencing requirements.

¶16 The Oklahoma Supreme Court recently considered a similar issue in Hemphill v. Atoka County Dist. Court, 2014 OK 24, ¶¶7-9, where the court found an inmate who wished to legally change his name was entitled to appear at the name change proceeding by telephone or other electronic means, because the inmate had a constitutional right of access to the courts. The Hemphill court quoted the following from Johnson v. Scott, 1985 OK 50, ¶¶9-11, 702 P.2d 56, 58:

Inasmuch as appellant was unable to testify because he was imprisoned, we conclude that the judge had discretion to depose appellant under the provisions of 12 O.S.Supp.1982 §§ 3204 and 3209 and 12 O.S.1981 § 397. The judge could have ordered appellant's testimony be taken by deposition upon written questions under 12 O.S.Supp.1982 § 3208(A), by deposition taken by telephone under 12 O.S.Supp.1982 § 3207(c)(7), or that a deposition upon oral examination be recorded by other than stenographic means under 12 O.S.Supp.1982 § 3207(C)(4). Hence, he abused such discretion and by so doing violated appellant's constitutional right of access to the courts.

Hemphill, 2014 OK 24, ¶7. The Hemphill court further noted that telephone, video conferencing and other electronic means can ensure appropriate inmate access to the courts and that such alternative means of access have become "commonplace." Id. at ¶9.

¶17 The trial court's belief that the jury must be able to visually witness Father's demeanor during testimony could have been achieved (a) by waiting an additional seven months for him to appear in person, (b) transporting him to Oklahoma from Texas, (c) permitting a video deposition, (d) or a video link with the facility in which he was incarcerated. In any event, it was error for the trial court to balance its desire for visual assessment so heavily against Father's due process right to be heard, when technology or a reasonably short release date would have provided a means of protecting both Father's fundamental right as well as the court's testimonial preferences.

¶18 The trial court erred, improperly denying Father's due process right to testify at the proceeding below. This matter is REVERSED and this cause REMANDED.

HETHERINGTON, V.C.J., and BUETTNER, J., concur.

FOOTNOTES

[1] These termination proceedings relate almost exclusively to allegations corresponding to B.W. Termination of Father's parental rights with respect to H.W. was based on Father's failure to correct the conditions that led to B.W.'s deprived adjudication. The record indicates H.W. did not live with Father on a regular basis and instead lived primarily with her biological mother, whose parental rights were voluntarily terminated prior to the instant proceedings.

[2] Note, even in this case the dissenting opinion vehemently argued this father had a right to present a deposition or testify via phone. In Matter of J.L.P., 774 P.2d at 632-33.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2007 OK CIV APP 22, 154 P.3d 1276, IN THE MATTER OF K.N.L.
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1990 OK 74, 795 P.2d 1035, 61 OBJ 1633, McLin v. Trimble
Discussed 2014 OK 24, 326 P.3d 521, HEMPHILL v. HARBUCK
Discussed 1977 OK 182, 570 P.2d 332, TAMMIE v. RODRIGUEZ
Discussed at Length 1978 OK 94, 580 P.2d 983, MATTER OF CHAD S.
Discussed 1979 OK 9, 590 P.2d 189, MATTER OF CHRISTINA T.
Discussed 1980 OK 140, 617 P.2d 886, Delaney, Matter of
Discussed 2000 OK 82, 13 P.3d 484, 71 OBJ 2668, IN THE MATTER OF A.M. & R.W.
Discussed at Length 1985 OK 50, 702 P.2d 56, 56 OBJ 1470, Johnson v. Scott
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 397, Examination of Imprisoned Person
Cited 12 O.S. 3204, Renumbered as 12 O.S. § 3227 by Laws 1989, HB 1154, c. 129, § 14, eff. November 1, 1989
Cited 12 O.S. 3207, Renumbered as 12 O.S. § 3230 by Laws 1989, HB 1154, c. 129, § 14, eff. November 1, 1989
Discussed 12 O.S. 3208, Renumbered as 12 O.S. § 3231 by Laws 1989, HB 1154, c. 129, § 14, eff. November 1, 1989
Cited